THE STATE OF NEVADA, APPELLANT, *v.*
LEON HALL, RESPONDENT.

No. 15241

February 13, 1989                                      768 P.2d 349

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, and *Paul E. Wommer* and *Ronald C. Bloxham,* Deputy District Attorneys, Clark County, for Appellant.

*Frank Cook,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

Following a preliminary hearing, a criminal information was filed against respondent Leon Hall charging him with one count of driving under the influence of intoxicating liquor causing substantial bodily injury, in violation of NRS 484.3795. Hall subsequently moved to dismiss the information on the ground that he had been unduly prejudiced by the state's loss of certain evidence. The district court granted the motion and the state appealed. For the reasons set forth below, we reverse the district court's order and remand the matter to that court for further proceedings.

The evidence presented at the preliminary hearing established that when Hall was first arrested, the police obtained both a urine and blood sample from his person. A police chemist testified that he conducted a gas chromatograph blood-alcohol test of Hall's blood sample, and that the test results indicated Hall had a blood-alcohol level of .272% by weight at the time the sample was taken. The chemist testified that he stored the blood sample in his laboratory for approximately one year, but eventually disposed of it along with approximately one hundred other samples. The chemist further indicated that he had not received anyone's specific permission to throw out the samples, but that he routinely disposed of such samples after storing them for a year to make room in the laboratory for newly arriving samples.

In his motion to dismiss, Hall argued that his due process rights were violated and his case unduly prejudiced by the state's loss of the blood sample.[1] Specifically, Hall contended that the

---

[1] The record does not indicate whether a blood-alcohol test was ever conducted on the urine sample taken from respondent. Further, the parties' briefs focus almost entirely on the loss of the blood sample. Accordingly, we decline to address the question of whether the alleged loss of the urine sample deprived Hall of due process.

loss of this evidence deprived him of the ability to retest the sample to determine the accuracy of the initial test results. The district court agreed that Hall's due process rights had been violated and granted his motion to dismiss.

In order to establish a due process violation resulting from the state's loss or destruction of evidence, a defendant must demonstrate either (1) that the state lost or destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the defendant's case and the evidence possessed an exculpatory value that was apparent before the evidence was destroyed. *See* California v. Trombetta, 467 U.S. 479 (1984); City of Las Vegas v. O'Donnell, 100 Nev. 491, 686 P.2d 228 (1984); Boggs v. State, 95 Nev. 911, 604 P.2d 107 (1979); *see also* Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 337 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

In the present case, there is nothing in the record to indicate that the state acted in bad faith when it disposed of the blood sample. The chemist who disposed of the sample had saved it for a reasonable period of time and then disposed of it in accordance with his routine practice and for a legitimate purpose. Accordingly, we conclude that the state was not acting in bad faith when it disposed of the sample. *See* City of Las Vegas v. O'Donnell, 100 Nev. 491, 494, 686 P.2d 228, 230 (1984).

Our review of this matter also reveals that Hall has failed to establish any prejudice resulting from the loss of the blood sample. Both the United States Supreme Court and this court have previously held that the state's failure to preserve breath samples will not unduly prejudice a defendant's case because (1) intoxilyzer testing is considered to be generally reliable, (2) statutory regulations exist to ensure that intoxilyzer machines are properly maintained, and (3) alternative means are available to impeach the reliability of intoxilyzer test results in addition to retesting the sample itself. *See* California v. Trombetta, 467 U.S. 479 (1984); City of Las Vegas v. O'Donnell, 100 Nev. 491, 686 P.2d 228 (1984).

We believe that the holdings in *Trombetta* and *O'Donnell* are equally applicable to the facts of the present case. First, the gas chromatograph blood testing method used in this case is considered to be one of the most reliable methods of blood-alcohol testing. *See* Richard E. Erwin, *Defense of Drunk Driving Cases,* § 17.05 (3d ed. 1985) (relying on J. Solon, J. Watkins, and L. Mikkelsen, *Automated Analysis of Alcohols in Blood,* J. Forensic

Sciences, § 17(3), at 447-52 (1972)). Further, Hall has not presented any evidence to indicate that the state's method of conducting gas chromatograph blood tests is in any way faulty or likely to lead to inaccurate results. In fact, Nevada has enacted statutory regulations to protect a defendant from the admission of inaccurate test results. Specifically, a defendant is entitled to receive "full information" regarding the machine used to test his blood samples and is entitled to inspect the machine. *See* NRS 484.389(3). If a defendant can establish that the machine was improperly maintained, he can move to have the test results suppressed for that reason. *See* NRS 484.389(4). A defendant can also seek to have the test results suppressed if he can establish that an unqualified person withdrew the blood used in the test.[2] *See* NRS 484.393.

Finally, we note that, as in *Trombetta* and *O'Donnell,* alternative means exist to impeach the accuracy of the blood-alcohol test used in this case. For example, Hall can attempt to impeach the test results by introducing evidence to establish ways in which a gas chromatograph machine might malfunction or otherwise produce inaccurate results, and by cross-examining the test administrator to determine whether any operator error might have occurred. *See* State v. Disch, 351 N.W.2d 492 (Wis. 1984). Hall can also use the data to which he is entitled under NRS 484.389(3) to attack the accuracy or reliability of the test results.

In light of the above considerations, we conclude that Hall has failed to establish that his due process rights were violated by the loss of the blood sample. Accordingly, we reverse the order of the district court dismissing the criminal charge against Hall, and we remand this matter to the district court for further proceedings consistent with this opinion.

YOUNG, C. J., STEFFEN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, Sr. J.,[3] concur.

---

[2]We note that in 1983, after the blood test in this case was conducted, the legislature enacted additional statutory regulations to further ensure the accuracy of blood-alcohol testing results. *See* NRS 484.388; 484.3882; 484.3886.

[3]The Governor designated THE HONORABLE DAVID ZENOFF, Senior Justice, to participate in the decision of this matter pursuant to Nev. Const. art. 6, § 4. THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.