THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, Appellant, v. ROBERT ROWLAND, Respondent.

No. 21471

June 28, 1991

814 P.2d 80

*Frankie Sue Del Papa,* Attorney General, Carson City, and *Keith D. Marcher,* Deputy Attorney General, Las Vegas, for Appellant.

*John G. Watkins,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The State of Nevada, Department of Motor Vehicles and Public Safety ("DMV"), challenges the district court's order reinstating respondent Rowland's driving privileges after the DMV, through its hearing officer, determined that the arresting officer was correct in revoking Rowland's driver's permit for driving under the influence of alcohol. After reviewing the record, we are convinced that the lower court erred in its ruling and therefore reverse.

Officer Mahoney of the Las Vegas Metropolitan Police Department was traveling southbound on Jones Boulevard in Las Vegas when a vehicle made a right turn from an eastbound street onto Jones Boulevard and proceeded ahead of Mahoney. Officer Mahoney paced the vehicle and determined that it was traveling in excess of 55 miles per hour in a 45-miles-per-hour posted

zone. Mahoney and the other vehicle stopped at a red light at the Jones Boulevard and Spring Mountain Road intersection. Mahoney noticed that the other vehicle waited approximately ten to fifteen seconds after the light turned green before it proceeded through the intersection. After the two vehicles passed through the intersection, Mahoney conducted an investigatory stop. Respondent Rowland was the driver of the other vehicle.

After Rowland stepped out of his vehicle in accordance with Officer Mahoney's request, the officer noticed that Rowland's gait was unsteady. Mahoney also noticed that Rowland's speech was slurred and that his breath smelled of alcohol. Rowland admitted to drinking a few beers earlier that evening at a bachelor party. Rowland agreed to take a series of five field sobriety tests and failed each test. The officer thereafter arrested Rowland for DUI-intoxication, read him the Nevada Implied Consent warning, and transported him to the Clark County Detention Center for testing.

Rowland chose to take a breath test, the results of which revealed a blood alcohol level of 0.11. Mahoney then gave Rowland a DMV notice of revocation and a seven-day temporary driver's license. Rowland's Nevada driver's license was confiscated.

Rowland challenged the revocation of his driver's license in an administrative proceeding held on November 30, 1989. The hearing officer found that there was sufficient proof that Rowland was operating his vehicle while under the influence of an intoxicating liquor and affirmed the revocation. Rowland petitioned the district court for judicial review. The district court held that:

> (1) the breath operator did not follow and complete the checklist as required by the committee on testing for intoxication; (2) the evidence presented as to the breath operator's certification was in conflict; (3) there was a lack of substantial evidence to show that petitioners [sic] blood alcohol was a .10 or more percent by weight of alcohol because of the error factor in the breath testing; (4) the petitioner was not given the opportunity to compare the originals with copies that were presented as evidence in violation of NRS 233B.123(2); and (5) there was no evidence presented that the breath machine was maintained as required by the regulations which have been adopted by the committee for testing on intoxication (see NRS 484.398(4)) [NRS 484.389(4)].

The district court reversed the revocation and reinstated Rowland's driving privileges.

## Analysis

### A. The Verax "BAC Verifier" Checklist

The district court first placed undue, if not unjustified, importance on the fact that paragraphs 12 and 13 of the Verax "BAC Verifier" checklist were allegedly not checked. This omission, which appeared to be effectively refuted by the DMV's more legible copy of the checklist which the district judge declined to consider, should not have been, in any event, a basis in whole or in part for overruling the administrative agency. NRS 484.379(1) reads:

> It is unlawful for any person who . . . [i]s under the influence of intoxicating liquor; or . . . [h]as 0.10 percent or more by weight of alcohol in his blood, to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access.

The reliable information which may be gleaned from the checklist amply supports the hearing officer's finding that Rowland was operating his vehicle in violation of the statute.

Paragraph 12 of the checklist reads: "Instrument will automatically print out the results. **REMOVE TEST PRINTOUT** and fill in information **ON ALL COPIES. CORRECT TIME/ DATE IF NECESSARY. INITIAL.**" (Emphasis original.) The DMV's exhibit 8 is a copy of the completed test printout referred to in paragraph 12. The testing officer properly provided the necessary information. Paragraph 13 reads: "**RECORD** necessary information below and in the **D.U.I. LOGBOOK.**" (Emphasis added.) Below this paragraph, the results of the tests were filled in by the testing officer. Therefore, paragraphs 12 and 13 are self-authenticating.

Moreover, the intent of paragraphs 12 and 13 is to ensure that the "appropriate information"—the test results—is provided by the testing officer once it becomes available. NAC 484.670(1).[1] As noted above, the testing officer did this. Checking the boxes next to the paragraphs, even if omitted, was merely a formality given the substantive information supplied by the testing officer. Any such omission was therefore not material.

---

[1] The code provision reads:
A certified operator of an evidential breath-testing device:

   1. In the ordinary course of his business and at the time he is performing a test of a person's breath, shall use, follow the instructions in, and enter the appropriate information on the Checklist for Operators of Breath-Testing Devices which is prepared by the director of the department of motor vehicles and public safety for use with the specific type of device that he is operating.

Our review of the record causes us to conclude that at the very least, the DMV substantially complied with the mandates of NAC 484.670(1) and that there is substantial evidence that Rowland operated his vehicle with a blood alcohol level in excess of 0.10 percent. The hearing officer did not err by considering this document when he upheld Rowland's revocation.

### B. *Conflict in the Certification Dates of the Testing Officer*

The district court also accorded undue importance to a conflict in the dates of the testing officer's certification. Although the conflict exists, Rowland suffered no prejudice therefrom. DMV's Exhibit 2 indicates that Officer Korb was certified on August 4, 1989, and its Exhibit 3 reflects a certification date in July, 1989. It is of no great concern in this case whether Korb was first certified in July or August of 1989. There is no evidence suggesting that Korb was not certified when the breath test was conducted in October of 1989.

### C. *The Margin of Error of the Breath Testing Device*

The district court accepted Rowland's rather novel position that a ten percent margin of error inherent in the Verax BAC Verifier should be taken into account before the DMV revokes an individual's driver's license. We reject this position for three reasons. First, Rowland gives no legal authority to support his position. Generally, unsupported arguments are summarily rejected on appeal. *See* Randall v. Salvation Army, 100 Nev. 466, 470-71, 686 P.2d 241, 244 (1984) (court may decline consideration of issues lacking citation to relevant legal authority). Moreover, without citation to authority, there was no reason for the district court to have considered this argument.

We nevertheless note that there is persuasive legal authority which is contrary to the position adopted by the district court. In People v. Randolph, 262 Cal.Rptr. 378 (Cal.Super. 1989), appellant chose to submit to a breath test after his arrest. Both tests revealed a blood-alcohol level of 0.10. The Ventura County Superior Court Appellate Department held that there was sufficient evidence to sustain appellant's conviction for driving a vehicle while having 0.10 percent or more alcohol in his blood. The *Randolph* court stated:

> This case addresses the issue whether the Legislature limited evidence to prove a violation of Vehicle Code section 23152, subdivision (b), solely to chemical tests with results so far above 0.10 percent that the range of the margin of error cannot extend below 0.10 percent. We conclude that

neither the statute nor general principles of law support such a limitation to the evidence.

*Id.* at 380.

Second, the relevant statute provides that a person's license shall be revoked if he or she has 0.10 percent or more by weight of alcohol in his or her blood. NRS 484.385(1). Neither statute nor administrative code provision mandate that a margin of error be considered before a license is revoked. This implies that the legislature and the Committee on Testing for Intoxication (CTI) either accept or are unconcerned about the extent of margins of error inherent in the approved breath-testing machinery. Rowland was tested two times on the Verax BAC Verifier, which is certified by CTI. NAC 484.600(12). He was found to have 0.11 percent by weight of alcohol in his blood both times. It was not error for the hearing officer to rely on this evidence when he upheld Rowland's revocation.

Third, there was substantial evidence to support the hearing officer's findings. Officer Mahoney noticed that Rowland was speeding, that he paused at an intersection for an unusual length of time after the light had turned green, that he smelled of alcohol, and had an unsteady gait. Additionally, Rowland failed five field sobriety tests and admitted that he had drunk beer at a bachelor party earlier in the evening. Finally, Rowland's blood alcohol level was tested at 0.11 percent.

### D. *Production of Original Documents*

The district court also concluded that the DMV failed to produce original documents at the administrative hearing, as required. NRS 233B.123(2) reads: "Documentary evidence may be received in the form of authenticated copies or excerpts, if the original is not readily available. Upon request, parties shall be given an opportunity to compare the copy with the original." This court has stated:

> The DMV next contends that the authenticated copy of the crime lab report was admissible pursuant to NRS 233B.123(2). NRS 233.123(2) provides: "Documentary evidence may be received in the form of authenticated copies or excerpts, *if the original is not readily available.* Upon request, parties shall be given an opportunity to compare the copy with the original." . . . We agree.
>
> The Las Vegas Metropolitan Police Department (LVMPD) had possession of the original crime lab report. If

Clements wanted the original report, he could have requested it from the LVMPD by a subpoena duces tecum, prior to the administrative hearing. The DMV did not have the original document. There is no statutory provision requiring the DMV to provide original documents which another agency generates and maintains. Moreover, NRS 233B.123(2) only requires that a party be given the *opportunity* to compare the copy with the original. Clements was free to take the certified copy to the LVMPD and compare it with the original.

State, Dep't of Mtr. Vehicles v. Clements, 106 Nev. 516, 519, 796 P.2d 588, 589-90 (1990) (emphasis in original). There are good reasons to apply the *Clements* holding in the instant case despite the fact that the original documents at issue here were maintained at DMV headquarters in Carson City. Keeping the original documents in a central location protects them from being lost, altered or damaged. Unless a subpoena duces tecum is issued, the interest in protecting original documents from loss or destruction is sufficient reason to declare them not readily available at an administrative hearing.

Moreover, if Rowland had any legitimate reason to doubt the authenticity of the certified copies, he could have arranged to compare them with the originals in advance of the revocation hearing. Rowland could have compared them with the originals at DMV headquarters. *Id.* Second, he could have arranged for someone in Carson City to compare them with the originals. Third, he could have summoned the originals by means of a subpoena duces tecum. NRCP 45(b), (c). The record indicates that Rowland did none of the above. He merely sent a letter to the DMV requesting to view the originals. There is no indication that Rowland in fact made an effort to compare or subpoena the originals. Rowland did not follow the procedures set forth by our holding in *Clements* when we interpreted NRS 233B.123(2). It was therefore error for the district court to base its decision to reinstate Rowland's driving privileges on this point.

### E.  *Proper Maintenance of the Breath-Testing Device*

Finally, the district court erroneously concluded that relief was warranted because there was no evidence that the breath-testing device was properly maintained. Rowland, however, did not meet his burden of establishing that the machine was improperly maintained at the hearing. State v. Hall, 105 Nev. 7, 768 P.2d 349 (1989). This court has stated:

Nevada has enacted statutory regulations to protect a defendant from the admission of inaccurate test results. Specifically, a defendant is entitled to receive "full information" regarding the machine used to test his blood samples and is entitled to inspect the machine. . . . *If a defendant can establish that the machine was improperly maintained, he can move to have the test results suppressed for that reason.*

*Id.* at 10, 768 P.2d at 350 (emphasis added). Rowland offered no evidence at the hearing to prove that the machine was not properly maintained; and he has made no showing that he unsuccessfully tried to inspect or obtain information about the machine. The fact that a breathalizer machine was used here in lieu of the machine used for testing blood samples mentioned in *Hall* is of no moment. The same principle applies in either case.

For the foregoing reasons, we reverse the district court's order reinstating Rowland's driving privileges and reinstate the decision of the hearing officer.