THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES, Appellant, *v.* SHARON E. BREMER, Respondent.

No. 27206

THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES AND PUBLIC SAFETY, Appellant, *v.* RICHARD JAMES SANDERS, Respondent.

No. 28680

July 15, 1997          942 P.2d 145

[Rehearing denied October 2, 1997]

*Frankie Sue Del Papa,* Attorney General, *Matthew T. Dushoff,* Deputy Attorney General, and *Jon M. Okazaki,* Deputy Attorney General, Carson City, for Appellants.

*John Glenn Watkins,* Las Vegas, for Respondents.

# OPINION

*Per Curiam:*

## FACTS

### DMV v. Bremer

On June 23, 1993, Nevada Highway Patrol Trooper Eric Barros ("Barros") initiated a traffic stop after observing Sharon Bremer's failure to maintain a travel lane. Barros detected a moderate odor of alcohol on Bremer's breath and inquired if she had been drinking, to which she replied that she had consumed three glasses of wine. Bremer then consented to and failed field sobriety and preliminary breath tests.

After placing Bremer under arrest, Barros recited her *Miranda* warnings and her rights and obligations under the Nevada Implied Consent Law. Bremer then consented to a blood test which was administered by a nurse at the Las Vegas City Jail. The samples taken were placed in an evidence refrigerator and later analyzed by Dr. Dragoslav Marcovich, a chemist who had previously qualified as an expert in the Eighth Judicial District of this state. Dr. Marcovich determined that Bremer's blood contained 0.150 gm% ethanol. Accordingly, Bremer's driver's privileges were suspended.

At the conclusion of her administrative hearing, the hearing officer upheld the revocation based upon an affidavit from the chemist. The district court granted Bremer's petition for judicial review, finding that the affidavit was improperly admitted and that the Department of Motor Vehicles ("DMV") had not availed itself of the provisions of NRS 484.3935. The DMV challenges these rulings.

### DMV v. Sanders

On the evening of March 12, 1995, Nevada Highway Patrol Trooper Mark Phillips ("Phillips") was dispatched to an accident on Interstate Highway 15 (I-15). Respondent Richard James Sanders was standing next to his car, which was imbedded in a right-of-way fence located beyond a raised concrete curb.

Sanders stated that he lost control because "it felt like ice on the road." Trooper Phillips asked Sanders to submit to a field sobriety test after Phillips detected the odor of alcohol on Sanders' breath. Sanders submitted to a breath test after failing the field sobriety test.

Two evidentiary breath tests were administered at the Clark County Detention Center. The tests revealed breath alcohol concentrations of .11% and .10%, respectively. Sanders was then booked for DUI and his license was revoked.

At Sanders' administrative hearing, the DMV sought to introduce declarations under penalty of perjury, as opposed to affidavits, to prove that the breath testing machine was calibrated and that its simulator solution was prepared properly. The exhibits were admitted into evidence, and the administrative law judge sustained the revocation of Sanders' driving privileges. The district court granted Sanders' petition for judicial review and held that the administrative law judge erred as a matter of law in admitting the declarations into evidence because they were not in affidavit form.

## DISCUSSION

*DMV v. Bremer*

The district court concluded that the DMV did not establish a proper foundation for the admissibility of Dr. Marcovich's affidavit at the administrative hearing because it failed to demonstrate the requisite indicia of trustworthiness and reliability of the blood test, and because the DMV chose not to take advantage of NRS 484.3935[1] (affidavit requirements for proof of calibration of blood, breath and urine testing devices). In support of its determination, the district court relied on Santillanes v. State, 104 Nev. 699, 765 P.2d 1147 (1988), in which we reaffirmed that the admissibility of scientific evidence must be assessed in terms of reliability and trustworthiness.

The DMV contends that the affidavit of the chemist was properly admitted at the administrative hearing pursuant to NRS 50.315, and that *Santillanes* is inapplicable because these proceedings were civil rather that criminal in nature. We conclude that the affidavit was admissible pursuant to NRS 50.315; that, while *Santillanes* applies to civil as well as criminal matters, its ruling does not support the result reached by the district court; and that, in accord with prior precedent drawing distinctions between administrative and criminal proceedings, the affidavit of

---

[1]The order granting judicial review actually refers to NRS 389.3935. There is no NRS 389.3935. We assume that reference to chapter 389 was a clerical error and that the order prepared by Bremer's counsel for signature by the district court was intended to refer to NRS 484.3935.

Dr. Marcovich was sufficient in and of itself to prove Bremer's blood alcohol content.

*Admissibility of scientific evidence in driver's license revocation proceedings*

NRS 50.315[2] in effect at the time of Bremer's arrest provided in part as follows:

> 1.   If a person has qualified in the district court of any county as an expert witness to testify regarding the presence in the blood, or urine of a person of alcohol, a controlled substance, or a chemical, poison or organic solvent, or the identity or quantity of a controlled substance alleged to have been in the possession of a person, the expert's affidavit is admissible in evidence in an administrative proceeding or in a criminal trial . . . to prove:
>
> . . . .
>
> (c) The amount of alcohol or the presence or absence of a controlled substance, chemical, poison or organic solvent, as the case may be.

Because Dr. Marcovich had been previously qualified as an expert in the field of chemistry in district court, his affidavit was admissible before the hearing officer. It was not necessary to re-qualify him or introduce new and redundant evidence of the "reliability and trustworthiness" of a scientific test that has been judicially accepted for many years. *See* State, Dep't of Motor Vehicles v. Tilp, 107 Nev. 288, 810 P.2d 771 (1991); and State v. Hall, 105 Nev. 7, 768 P.2d 349 (1989). Bremer disingenuously argues here, as she did below, that *Santillanes* requires an evidentiary foundation be re-established showing that an ordinary blood test for alcohol is trustworthy and reliable in every administrative and criminal proceeding. To the contrary, *Santillanes* simply applied the two-pronged test of reliability and trustworthiness to a controversial blood test not employed here. In fact, Bremer made no attack on the specific nature of the test she underwent, she only questioned the foundation laid. *Santillanes* did not create a broad rule of evidence that judicially accepted scientific doctrine must be revalidated each time proof thereon is attempted (here a blood alcohol test that has been accepted as valid on literally thousands of occasions). If Bremer's argument were to prevail here, these types of proceedings would be marked by an unending, unreasonable and unnecessary evidentiary burden. Thus, despite the fact that the holding of *Santillanes* relative to the

---

[2]NRS 50.315(1) was amended in 1995 to delete the operative language in this case. Effective October 1, 1995, the language of former NRS 50.315 was incorporated into NRS 50.320(1).

threshold requirement for the admissibility of expert testimony applies to all evidentiary proceedings, civil or criminal, that decision does not compel the result reached below.

The DMV argues that the district court's reading of *Santillanes* is clearly erroneous because the burdens of proof and rules of admissibility of evidence differ between the criminal and civil arenas, particularly in the context of administrative hearings. As support for this proposition, the DMV notes that NRS 233B.123 relaxes the evidentiary rules in administrative hearings and that findings of fact are sustainable via substantial evidence only.[3] Thus, the DMV maintains that the district court's reliance on *Santillanes* is inapposite.

This court has carved out a unique posture towards administrative driver's license revocation proceedings. "It is well established that administrative hearings concerning the revocation of driver's licenses are civil in nature, not criminal." State, Dep't Mtr. Vehicles v. Vezeris, 102 Nev. 232, 235, 720 P.2d 1208, 1211 (1986). In *Vezeris,* we concluded that "only defendants in criminal proceedings may object to the use of affidavits of persons drawing blood samples; *parties seeking administrative review of driver's license revocations may not object to the use of affidavits." Id.* at 236, 720 P.2d at 1211 (emphasis added). Although the affidavits at issue in *Vezeris* involved persons drawing rather than those testing blood samples, the same reasoning applies because of the long established reliability of blood-alcohol testing. *Id.* at 236, 720 P.2d at 1211 and 1212.

We conclude that the DMV provided sufficient foundation relating to the trustworthiness and reliability of these blood tests. First, pursuant to NRS 50.315, Dr. Marcovich was qualified as an expert in the district court and could, therefore, proffer an affidavit to prove Bremer's blood alcohol level. Second, the DMV's blood-testing procedures are inherently reliable, particularly in light of our rulings in *Tilp* and *Hall.* Moreover, *Vezeris* instructs, by analogy, that Bremer may not object to the use of Marcovich's affidavit in an administrative driver's license revocation proceeding. Accordingly, the district court erred in finding that Dr. Marcovich's affidavit was improperly admitted or was insufficient as a matter of law.

*Applicability of NRS 484.3935*

NRS 484.3935 in effect on June 23, 1993, provided as follows:

---

[3]*See* NRS 233B.123. Also, NRS 233B.121(8) provides: "Findings of fact must be based exclusively on substantial evidence and on matters officially noticed."

*If:*

1.   A manufacturer or technician in a laboratory prepares a chemical solution or gas to be used in calibrating a device for testing a person's breath, blood or urine to determine the percent by weight of alcohol in his blood; and

2.   The technician makes an affidavit that the solution or gas has the chemical composition that is necessary for calibrating the device, *it is presumed that the solution or gas has been properly prepared and is suitable for calibrating the device.*

(Emphasis added.)

The DMV contends that NRS 484.3935 did not *require* the submission of an affidavit stating that the blood-testing device used to measure a person's concentration of alcohol was properly calibrated. Although Bremer concedes this point, she argues that, in the absence of some other proof relative to calibration, a failure to utilize the option to provide an affidavit under this provision rendered the affidavit of Dr. Marcovich inadmissible because the *performance* of the test in question could not have been established as reliable and trustworthy. We conclude that, while NRS 484.3935 in place at the time of Bremer's arrest referred to breath, urine and *blood* testing, prior case authority exempted blood testing from proof requirements as to calibration of the testing device.

It is clear that, for the purpose of proving calibration of testing devices, the legislature and this court have, over time, viewed breath tests and blood-testing differently. We are mindful that a strict reading of NRS 484.389(4) in effect as of Bremer's arrest, the provision requiring evidence of calibration, made no distinction between blood and breath testing;[4] however, our 1991 decision in *Tilp* did draw such a distinction.

In *Tilp,* we noted that the committee on testing for intoxication confined its regulations for the calibration of equipment to the testing of breath samples as opposed to blood samples. Accordingly, we held that NRS 484.389(4) did not bar the admission of blood testing without evidence of calibration. *Tilp,* 107 Nev. at 291, 810 P.2d at 773. Our holding in *Tilp* has since been codified in the 1993 and 1995[5] revisions of the Nevada Revised Statutes. Thus, in the absence of any regulation in 1993 requiring evidence

_____

[4]*See infra* note 5.

[5]For example, NRS 484.389(4) was amended in 1993 after Bremer's arrest to add the word "breath," thus effectively eliminating the calibration proof requirement for blood testing gas chromatography:

Evidence of a required test is not admissible in a criminal or administrative proceeding unless it is shown by documentary or other evidence

of calibration for the administration of *blood* tests, we conclude that Bremer's argument is without merit.

We therefore hold that the DMV hearing officer correctly admitted evidence of Bremer's blood test and correctly sustained the revocation of her driving privileges.

*DMV v. Sanders*

*Whether NRS 50.315(3) and (4) require the submission of foundational documents in affidavit form*

At the administrative hearing, the hearing officer allowed the DMV to lay a foundation for the results of Sanders' breath test to be presented in the form of unsworn declarations. The district court concluded that NRS 50.315 required the submission of documents in affidavit form. While a strict reading of the statute supports this ruling, for the reasons set forth below, we hold that the distinctions between the declarations utilized in this case and a formal sworn affidavit are not such as to render the information contained therein inadmissible in the context of administrative proceedings to revoke driving privileges.

The 1993 revisions to NRS 50.315 relaxed the foundational requirements for proof of identity of a person whose breath, blood or urine has been drawn for testing and for proof of the chain of custody of blood samples. *See* NRS 50.315(5). They authorized the person taking the sample to either submit an affidavit *or* a sworn declaration under penalty of perjury on these issues. Prior to the amendment, only notarized affidavits were admissible. The amendment did not eliminate the affidavit requirement with regard to the results of these tests. The DMV, however, points to the fact that the 1993 legislature also enacted NRS 53.045:

> 1. Except as otherwise provided in subsection 2, any matter whose existence or truth may be established by an affidavit or other sworn declaration may be established with the same effect by an unsworn declaration of its existence or truth signed by the declarant under penalty of perjury, and dated, in substantially the following form:
>
> (a) If executed in this state: "I declare under penalty of perjury that the foregoing is true and correct."
> Executed on............................................. .............................................
>                    (date)             (signature)
>
> . . . .
> 2. This section does not dispense with a requirement of a

---

that the law enforcement agency calibrated the *breath* testing device and otherwise maintained it as required by the regulations of the committee on testing for intoxication.

(Emphasis added.) *See also* 1993 and 1995 amendments to NRS 50.315.

witness to or the authentication of a signature, or the requirements of NRS 133.050 or a similar statute.

The DMV maintains that the two declarations at issue fully complied with the statutory provisions pursuant to NRS 53.045.[6] The DMV argues that NRS 53.045 is clear and unambiguous on its face; therefore, "a court may not go beyond the language of the statute in determining the legislature's intent." Roberts v. State of Nevada, 104 Nev. 33, 37, 752 P.2d 221, 223 (1988). The limitations on dispensing with the need for an affidavit are set forth under NRS 53.045(2). Thus, the legislature clearly intended to require affidavits in certain contexts.

Sanders concedes that the 1993 version of NRS 50.315(5) allowed the person drawing the blood sample to submit a declaration as opposed to an affidavit to prove certain facts. Nevertheless, Sanders argues that this amendment *did not* alter the requirement for affidavits of persons mentioned in the remaining paragraphs of NRS 50.315,[7] particularly those relating to *breath* testing.

It is noteworthy that the 1993 amendments to NRS 50.315 were effected contemporaneously with the enactment of NRS 53.045, the general declaration statute. This raises the issue as to whether the general declaration statute controls.

This court has acknowledged the accepted rule of statutory construction "that a provision which specifically applies to a given situation will take precedence over one that applies only generally." Sierra Life Ins. Co. v. Rottman, 95 Nev. 654, 656,

---

[6]One of the DMV exhibits is an unsworn declaration with regard to the accurate calibration of the intoxilyzer. The other is an unsworn declaration as to the correct chemical composition of the solution used for calibrating the breath testing device.

[7]Further amendments to NRS 50.315 were adopted by the 1995 legislature. As noted above, the incident here took place prior to the effective date of the 1995 changes. The affidavit requirements prior to October 1, 1995, relating to proof of "calibration" remained unchanged:

> 3. The *affidavit* of a person who prepared a chemical solution or gas that has been used in calibrating a device for testing another's breath to determine the amount of alcohol in his breath is admissible in evidence in any criminal or administrative proceeding to prove:
> (a) The affiant's occupation; and
> (b) That he prepared a solution or gas having the chemical composition necessary for accurately calibrating it.
> . . . .
> 4. The *affidavit* of a person who calibrates a device for testing another's breath to determine the amount of alcohol in his breath is admissible in evidence in any criminal or administrative proceeding to prove . . . .

(Emphasis added.)

601 P.2d 56, 57 (1979). Sanders argues that because NRS 53.045 is silent with regard to its full force and effect over NRS 50.315(3) and (4), this court cannot imply that the general declaration statute supersedes the specific affidavit requirements of NRS 50.315. Sanders also contends that the 1995 legislature's subsequent failure to substitute or add the word "declaration" in NRS 50.315(1), (2), (3) and (5) provides proof that the legislature has always intended to require the use of affidavits in some instances.[8]

While Sanders' contentions relative to the standard rules of statutory construction are correct, we hold that the distinction between an affidavit and declaration made under penalty of perjury is not such as to affect the substantial rights of parties to civil license revocation proceedings. *Id.* at 236, 720 P.2d at 1211. In so ruling, we find no irreconcilable repugnancies between NRS 50.315 and NRS 53.045. *See* City of Las Vegas v. Int'l Assoc. Firefighters, 91 Nev. 806, 543 P.2d 1345 (1975).[9]

In this limited context, there is no logical reason for requiring the formalistic protocol of a sworn affidavit. Further, the administration of an oath or affirmation no longer has religious significance. Thus, for the purposes of administrative hearings of the type involved in this matter, the distinction between a sworn declaration and an affidavit is a distinction without a legal difference.

Accordingly, for the reasons discussed above, we reverse the district court and hold that the administrative law judge did not err in admitting the declarations in lieu of affidavits.

*Whether the Nevada Supreme Court has appellate jurisdiction*

Bremer and Sanders argue that this court is without jurisdiction to review decisions of district courts on judicial review of administrative proceedings under Article 6, section 6, of the Nevada Constitution:

> The District Courts in the several Judicial Districts of this State have original jurisdiction in all cases excluded by law from the original jurisdiction of justices' courts. They also

---

[8]The 1995 revision of NRS 50.315 retained the word "affidavit" in paragraphs (1), (2), (3), and (5). Only paragraph (4) authorizes either an affidavit or declaration.

[9]Our ruling in this case does not affect affidavit requirements set forth in other contexts, *e.g.*, NRS 53.045(2), NRCP 56, the Nevada Probate Code, criminal DUI trials, NRS 31.260(2), NRS 6.130(2) and NRS 1.235.

shall have final appellate jurisdiction in cases arising in Justices Courts and such other inferior tribunals as may be established by law. . . .

They maintain that an administrative hearing is held before an "inferior tribunal" and that judicial review over such proceedings in district court is the final "appellate" remedy of the parties thereto. Further, both Bremer and Sanders contend that, pursuant to Article 6, section 4, this court's appellate jurisdiction is lacking because administrative proceedings are not "civil cases arising in district courts."[10] These contentions are without merit.

Bremer and Sanders primarily rely upon Nevada Industrial Commission v. Reese, 93 Nev. 115, 560 P.2d 1352 (1977), in which we upheld the constitutionality of the judicial review prerogatives of district courts in the context of workers' compensation claims. We noted in *Reese* that the power of judicial review over administrative agency hearings fell under Article 6, section 6 of the Nevada Constitution, which vests district courts with "final appellate jurisdiction in cases arising in Justices Courts, and such other inferior tribunals as may be established by law." Because *Reese* treats administrative law courts as "inferior tribunals," Bremer and Sanders claim that *Reese* "reverses" Nevada Tax Commission v. Mackie, 74 Nev. 276, 329 P.2d 448 (1958), in which we rejected a similar claim regarding this court's jurisdiction. In *Mackie,* it was contended that this court was without jurisdiction to review a district court ruling on judicial review modifying a tax commission license revocation. In response, we held that the "final appellate jurisdiction" of district courts over "inferior" tribunals did not divest this court of its appellate jurisdiction:

> We cannot accept respondents' definition. The tribunals to which this section refers are judicial and not administrative tribunals. The review of tax commission action which is provided by law, NRS 463.310, subd. 7, is not an exercise of appellate jurisdiction. Appellate jurisdiction is jurisdiction to review the action of inferior *judicial* tribunals.

*Id.* at 279, 329 P.2d at 449. (Emphasis added.)

To the extent that these cases are inconsistent, we now undertake to resolve any conflict between them. *Reese* does not reach the issue of this court's appellate jurisdiction except, possibly, by implication. *Mackie* arguably confuses the difference between

---

[10]Article 6, section 4 provides in part: "The supreme court shall have appellate jurisdiction in all civil cases *arising* in district courts . . . ." (Emphasis added.)

judicial and administrative tribunals (certainly, a tax commission ruling may not involve a decision of an administrative law judge). We now hold that the power of judicial review at the district court level *arises* in district court under Article 6, section 4 of the Nevada Constitution. Contrary to the contentions made by Bremer and Sanders, *Reese* does not overrule *Mackie,* expressly or by implication. *Reese* did not refer to *Mackie* and did not reach the jurisdictional issue Bremer and Sanders now raise. Further, Article 6, section 8 of the Nevada Constitution provides that the legislature shall prescribe by law the manner and determine the cases in which appeals may be taken from justices' and other courts. Consistent with this authority, NRS 233B.150 expressly grants this court jurisdiction to review final judgments of the district court, notwithstanding the origin of the claim. This is so even if administrative hearing officers preside over "inferior tribunals." Thus, to the extent that Article 6, section 6 of the constitution seems to conflict with Article 6, sections 4 and 8, we resolve that conflict in favor of this court's jurisdiction.

## CONCLUSION

For the reasons discussed above, we reverse the district court's rulings in these consolidated matters.

Sanders raises other issues that are not properly before this court.