926 P.2d 775 (1996)
SHERIFF, CLARK COUNTY, Nevada, Appellant,
v.
George Henry WARNER, Respondent.
No. 27496.
Supreme Court of Nevada.
October 22, 1996.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, James Tufteland, Chief Deputy District Attorney, and Dan Seaton, Deputy District Attorney, Clark County, for Appellant.
John Glenn Watkins and John Hall Howard, Las Vegas, for Respondent.

OPINION
ROSE, Justice:
Respondent George Henry Warner (Warner) was arrested on August 7, 1989, and *776 charged by a criminal complaint on August 15, 1989, with one count of first degree arson and one count of murder. The charges arose out of a fire on June 5, 1989, which resulted in the eventual death of Warner's wife Carol Warner (Carol) on June 20, 1989, of pneumonia. Warner filed in the district court a pretrial petition for a writ of habeas corpus. The district court granted the petition and we now reverse the district court's order.

FACTS
The fire occurred at approximately 3:00 a.m. on June 5, 1989, at the Warners' mobile home located within a mobile home park in Las Vegas, Nevada. After the fire began, the Warners' neighbor, Evelyn Farr, heard a male person call for help because his house was on fire. Farr called the fire department and began to spray water from her backyard toward the fire. Farr observed Carol appear at Farr's backyard door as if Carol had walked down the street and up Farr's driveway. Witnesses observed bloody footprints on the street leading to Farr's driveway. Carol was wearing a robe and asked to use Farr's shower. Shortly thereafter, Farr followed Carol into Farr's home. While Farr was in her backyard, she did not see anyone climb over the wall separating her property from the Warners' property and enter her backyard. The wall separating their property is four feet high with a dense hedge of eight-foot-high oleanders adjacent to the wall.
As a result of the fire, Carol sustained severe burns over 80 to 85 percent of her body. Carol was so badly burned that she was bleeding and her skin was hanging from her body. While paramedics were treating Carol for her burns in Farr's mobile home, Carol refused to see Warner and asked that someone call her children so that she could tell them what happened. Warner showed little emotion and asked few questions about Carol's condition. Upon arrival at the hospital, Carol was tracheally intubated and could not speak from that time until she died. Warner's injuries included a cut on his hand requiring stitches, singed hair on the back of his head, and a headache. Warner sustained no other injuries and witnesses observed that the white clothes Warner was wearing during the fire were virtually spotless.
Experts retained by the state opined that the fire was caused by arson with the use of an accelerant such as a flammable liquid. The experts' opinions were based on the burn patterns in the mobile home, the definite demarcation between burned and unburned material, the unusual burning of the floor boards, and the travel and spread of the fire. The burn patterns within the mobile home also suggested that the fire had three points of origin. One point was located on the seat of a lounge chair in the den. The experts further concluded that the burn patterns on Carol's body suggested that Carol was in a sitting or bent position at the time she sustained the burns, and that the burns were caused by an accelerant being poured on her and ignited.
Other evidence obtained by the state included evidence that Warner was involved in an extramarital relationship, an incriminating statement made by Warner that he intended to kill Carol, the presence of a gasoline can and a Bic butane lighter located outside of the mobile home after the fire, and evidence that Carol's ventilator which assisted her breathing had been tampered with while Warner was present in Carol's hospital room.
The state's theory of the crime is that Carol was asleep in the lounge chair in the den when Warner poured accelerant on her and ignited it. Awakened and burned by the fire, Carol then exited the mobile home through the front door and walked down the street to Farr's home to use the shower. Warner, on the other hand, contends that he was asleep in their bed when he awoke to the sound of Carol's screams. Carol opened the bedroom door and was engulfed in flames. Warner claimed he was unable to breathe because of the smoke and he hit the bedroom window and fell outside. Carol then exited through the window using the drapes to assist her to the ground. Warner claimed he then wrapped his robe around Carol and lifted Carol over the wall and through the oleanders into Farr's backyard. Warner asserts that the fire was caused by one of his dogs chewing through an electrical cord attached to a lamp.
*777 At the initial inspection and examination of the fire scene, arson was not a suspected cause of the fire and the mobile home remained unsecured for eighteen days following the fire. Thomas Pugh, a fire investigator for an insurance company, first determined that the cause of the fire was accidental. Upon later review of the photographs and other evidence, Pugh suspected arson. When Carol died on June 20, 1989, the police began to suspect arson and sealed off the fire scene. On June 23, 1989, the police obtained and executed a search warrant for the mobile home.
Pursuant to the search warrant, the police gathered and impounded floor samples, carpet, electrical wire, broken glass, furniture, a portion of the front steps, a lamp, and a Bic butane lighter. Items which the state did not impound included the lounge chair, an ottoman used with the lounge chair, the robe worn by Carol, the gasoline can, the drapes, soil samples, and blood stains from the block wall located between the Warner and Farr homes. The police also took numerous photographs of the fire scene. The state tested samples of the lounge chair and ottoman and found no traces of an accelerant.
Although the district court's appointment of investigators to assist Warner occurred after the mobile home was lost or destroyed, Warner walked through the mobile home with Ronald Heilman, an investigator who performed an examination of the mobile home and its contents. While the exact date of the examination is unclear, it appears to have occurred several months after the fire. Heilman took photographs of the fire scene and observed that the ottoman was located on the seat of the lounge chair and that the two pieces of furniture were apparently fused or melted together as a result of the fire. Warner, who worked for the Nevada Highway Patrol, had access to the mobile home for some period of time after the fire. Several other people also had access to the mobile home, including a person who allegedly had a vendetta against Warner. Warner obtained a court order to preserve the mobile home and its contents, but the mobile home was apparently taken by a mortgagor some time after December of 1989.
After the filing of the criminal complaint on August 15, 1989, Warner was arraigned and a preliminary hearing was scheduled. Before the date set for the preliminary hearing, the prosecutor, without notice to Warner, presented the case to a grand jury on December 7, 1989. The grand jury indicted Warner for first degree arson and murder. Pursuant to the state's motion, the justice's court dismissed the criminal complaint. Subsequently, the district court granted Warner's petition for a writ of habeas corpus and dismissed the indictment, concluding that Warner had not been provided with reasonable notice of the grand jury hearing prior to the hearing, pursuant to Sheriff v. Marcum, 105 Nev. 824, 783 P.2d 1389 (1989). Subsequently, this court held that the decision in Marcum did not apply retroactively. Gier v. District Court, 106 Nev. 208, 789 P.2d 1245 (1990). The district court then reinstated the indictment and Warner filed a petition for a writ of prohibition in this court. We granted the writ of prohibition, prohibiting the district court from reinstating the indictment, and we ordered the indictment dismissed.
The state then elected to file a second complaint on May 17, 1991. The justice's court dismissed the complaint as being in violation of NRS 174.085(5), and the state did not appeal. Subsequently, the district attorney, with notice to Warner, presented the case to a second grand jury between July 16, 1992, and August 20, 1992. Warner was represented by court-appointed counsel, and expert witnesses testified on behalf of Warner. The grand jury refused to indict Warner. In light of evidence that this result was based on conflict and discord among the grand jurors rather than a lack of probable cause, the district court granted the state's motion for a third grand jury hearing. This court denied Warner's petition for a writ of certiorari, prohibition, or mandamus.
The state presented the case to a third grand jury on February 17, 1994, and February 24, 1994. Warner's request for court-appointed counsel was denied. At the grand jury hearing, eighteen witnesses testified on behalf of the state. Warner testified in his own defense and the state provided the *778 grand jurors with transcript testimony of Warner's experts who testified at the second grand jury hearing, and with various reports and records. The grand jurors acknowledged receipt of this exculpatory evidence. The grand jury indicted Warner for first degree arson and murder.
On November 16, 1994, Warner filed in the district court a petition for a writ of habeas corpus. After a hearing, the district court granted Warner's petition on two grounds: (1) the state's failure to preserve potentially exculpatory evidence was prejudicial to Warner; and (2) the district court's failure to appoint counsel to represent Warner at the third grand jury hearing deprived Warner of his Sixth Amendment right to counsel. The state filed a notice of appeal.

DISCUSSION

I. Loss of Evidence

The district court granted Warner's pretrial petition for a writ of habeas corpus on the ground that the state failed to preserve potentially exculpatory evidence which deprived Warner of his due process right to a fair trial.[1] Specifically, the district court concluded that the state's failure to preserve the lounge chair, ottoman, carpet, and the victim's robe prejudiced Warner in his ability to refute the state's theory that he poured accelerant on Carol. The district court further determined that the state's failure to preserve electrical wire, broken glass, and fixtures from the mobile home prevented Warner from proving his claim that he and Carol exited from the bedroom window of the mobile home.
This court has consistently held that
[i]n order to establish a due process violation resulting from the state's loss or destruction of evidence, a defendant must demonstrate either (1) that the state lost or destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the defendant's case and the evidence possessed an exculpatory value that was apparent before the evidence was destroyed.
State v. Hall, 105 Nev. 7, 9, 768 P.2d 349, 350 (1989); see also Howard v. State, 95 Nev. 580, 600 P.2d 214 (1979).
According to our review of the record, there is no evidence that the loss of the items resulted from any bad faith on the part of the state. Even though Warner obtained a court order to preserve the mobile home and its contents, there is no indication that the police destroyed this evidence in an attempt to make it unavailable to Warner. Rather, both parties assert that the mobile home was taken by a mortgagor when Warner failed to make the mortgage payments. Accordingly, we conclude that the state did not act in bad faith.
We must therefore determine whether the loss of the evidence was prejudicial to Warner. The burden of demonstrating prejudice lies with Warner and
requires some showing that it could be reasonably anticipated that the evidence sought would be exculpatory and material to appellant's defense. It is not sufficient that the showing disclose merely a hoped-for conclusion from examination of the destroyed evidence, nor is it sufficient for the defendant to show only that examination of the evidence would be helpful in preparing his defense.
Boggs v. State, 95 Nev. 911, 913, 604 P.2d 107, 108 (1979) (citation omitted); see also Sterling v. State, 108 Nev. 391, 834 P.2d 400 (1992).
Warner contends that the state lost evidence including the lounge chair, the ottoman, the robe worn by Carol, electrical wire, broken glass from the bedroom window, carpet samples, soil samples, fixtures from the mobile home such as a sewing machine and a *779 stereo, a gasoline can, drapes from the bedroom window, and blood on the block wall located between the Warner and Farr properties. We conclude that Warner has failed to demonstrate how the unavailability of this evidence has prejudiced him.
First, it is important to note that the state impounded fragments of broken glass from the bedroom window, pieces of copper wire from inside the mobile home, a lamp which Warner contended was the cause of the fire, and samples of carpet. Therefore, these items are available for Warner's inspection. Further, Warner has possession of the robe worn by Carol, and therefore has the opportunity to examine it. Although Farr washed the robe immediately after the fire and some evidence may have been lost, any exculpatory value of the robe was unknown at the time because the police and investigators did not immediately suspect arson.
As for the other lost items, although the lounge chair and the ottoman are clearly material in light of the state's theory that Warner poured an accelerant on Carol as she slept in the lounge chair, Warner has not sufficiently demonstrated the exculpatory value of the lounge chair and ottoman. The primary exculpatory value which Warner has suggested is testing the items for traces of an accelerant. However, the state is willing to stipulate or present expert testimony that tests revealed no traces of any accelerant on the lounge chair and ottoman. Defense counsel also contends that the ottoman was placed on top of the lounge chair such that Carol could not have been sitting there at the time of the fire. However, the location of the furniture inside the mobile home can be determined by photographs taken by both the state and Warner's investigator.
As for the soil and carpet samples, although testing the samples may reveal no traces of an accelerant, this is not exculpatory in light of the other tests revealing no traces of an accelerant in the lounge chair and ottoman. The state's theory of arson is not based on testing items in the mobile home for traces of an accelerant. Rather, the state's case is based on an analysis of the burn patterns which suggest that an accelerant was used to set the fire.
Insofar as the fixtures in the mobile home are concerned, Warner has not made a sufficient showing of how fixtures in the mobile home constitute exculpatory evidence. Although the condition of fixtures within the mobile home may reveal information regarding the extent and spread of the fire, the location and condition of items within the mobile home are preserved by photographs taken of the fire. Further, Warner had access to the fixtures for some time and he removed several items from the mobile home after the fire. Therefore, Warner could in fact have possession of some fixtures from the mobile home. This analysis applies to the gasoline can as well. Warner had access to the gasoline can for some time after the fire and Warner has not specifically demonstrated how the gasoline can is exculpatory.
Finally, Warner contends that testing the drapes to show that the drape material matched a melted substance located on the robe and testing the blood on the block wall to determine that it came from either Warner or Carol, would corroborate his version of the events. While testing these items may corroborate Warner's version of the events, this does not transform the drapes and the presence of the blood into exculpatory evidence. Even if Warner and Carol exited from the window and he lifted her over the block wall, this does not prove that Warner did not set the fire. Mere assertions by the defense counsel that an examination of the evidence will potentially reveal exculpatory evidence does not constitute a sufficient showing of prejudice. See Boggs v. State, 95 Nev. 911, 604 P.2d 107 (1979). Therefore, we conclude that because Warner has failed to prove that the lost evidence would have been exculpatory, the unavailability of the evidence does not violate Warner's due process right to a fair trial.
Moreover, Warner's inability to test the mobile home and its contents for traces of an accelerant does not strengthen the state's case, because the state is willing to stipulate that no traces of an accelerant were found. See Sanborn v. State, 107 Nev. 399, 812 P.2d 1279 (1991) (the state cannot be allowed to benefit by its failure to preserve evidence, particularly when the state's case is strengthened *780 by the absence of the evidence). Rather the state's arson theory is based upon expert examination of photographs of the mobile home and of the victim's body, which suggests that the burn patterns are consistent with arson. Warner may rebut the state's case by an independent review of the burn patterns which are preserved by photographs.
Further, Warner had personal access to the mobile home for a significant period of time after the fire and Warner's investigator examined and took photographs of the mobile home and its contents. Warner had been indicted with first degree arson, and his investigator most likely observed the unusual burn patterns and the three points of origin in the mobile home, suggesting that the fire was caused by arson. Therefore, Warner and his investigator had some opportunity to obtain exculpatory evidence from the mobile home and its contents, the loss of which he now claims is prejudicial.
We conclude that while the presence of the mobile home and its contents could aid in Warner's defense, the loss of that evidence was not so prejudicial that Warner will be denied a fair trial. Accordingly, the district court erred in granting Warner's habeas petition based on the state's loss of certain evidence.[2]

II. Right to Counsel

The district court also granted Warner's pretrial petition for a writ of habeas corpus on the ground that the failure to appoint counsel to represent Warner at the third grand jury hearing violated Warner's Sixth Amendment right to counsel. The district court acknowledged that this court has not extended the right to counsel to grand jury hearings, but reasoned that Warner was "facing the prosecutorial forces of organized society and the state was obviously committed to prosecuting him." The district court was further persuaded by the fact that Warner was represented by counsel at the second grand jury hearing, which failed to indict him.
"A person whose indictment the district attorney intends to seek or the grand jury on its own motion intends to return may be accompanied by legal counsel during any appearance before the grand jury." NRS 172.239(1) (emphasis added). This court has refused to extend the right to court-appointed counsel to a person who is the target of a grand jury investigation. Sheriff v. Bright, 108 Nev. 498, 835 P.2d 782 (1992).
[T]he right to counsel has been recognized as applicable to certain pre-trial procedures, including preliminary hearings, arraignments, certain identification procedures, and efforts to elicit inculpatory statements.
However, the right has not been extended to grand jury proceedings because they are generally viewed to be investigatory in nature, and occurring prior to the initiation of adversarial proceedings. Grand jury "targets" have not been formally charged with a crime until indicted.
Bright, 108 Nev. at 501, 835 P.2d at 784 (citation omitted). Extending the right to counsel to a grand jury hearing might transform the process into a mini-trial. Id. at 502, 835 P.2d at 785. Further, the rights of the individual are sufficiently safeguarded by the right to notice of the hearing and to testify at the hearing, and by the prosecutor's obligation to present known exculpatory evidence. Id. at 501-02, 835 P.2d at 784-85.
Pursuant to the rule set forth in Bright, we conclude that Warner was not entitled to court-appointed counsel at the third grand jury hearing. Although two complaints and an indictment against Warner had been dismissed at the time of the third grand jury hearing, there were no charges pending against Warner at the time.
*781 Further, although Warner was represented by counsel at the second grand jury hearing at which the grand jury refused to indict him, and Warner contends that the failure to indict resulted from his counsel's attempts to show a lack of probable cause, this may not be entirely true. Rather, failure to indict may have resulted from discord between the grand jurors and the district attorney. Further, failure of the grand jury to indict does not prevent resubmission of the same charges to a grand jury upon court approval. NRS 172.255(4). Moreover, at the third grand jury hearing, the state provided Warner with certain procedural protections including permitting Warner to testify and providing the grand jurors with known exculpatory evidence such as transcript testimony of Warner's experts who testified at the second grand jury hearing.
The tortured procedural history of this case is unfortunate, but we are unwilling to make an exception to the rule that targets of grand jury hearings are not entitled to court-appointed counsel during such hearings. The legislature of this state has provided targets of grand jury hearings with sufficient procedural protections, and Warner was provided with these protections here. Accordingly, we conclude that the district court erred in granting Warner's pretrial petition for a writ of habeas corpus on this basis.
For the reasons discussed above, we reverse the order of the district court granting Warner's pretrial petition for a writ of habeas corpus and we remand this matter to the district court for further proceedings consistent with this opinion.
STEFFEN, C.J., and YOUNG and SHEARING, JJ., concur.
SPRINGER, J., dissents.
SPRINGER, Justice, dissenting:
This case was commenced over seven years ago. In my view, the trial court was acting properly within its discretion when it finally ruled that the state's loss or destruction of evidence necessary for Warner's defense prejudiced Warner in his ability to refute the state's theory of the case.
The trial judge had the opportunity to examine a wide assortment of facts relating to the nature of each of a number of evidential items and to hear testimony relative to how and why certain important evidence for the defense had become unavailable. Without having the advantage of being on the scene and inspecting the large volume of evidence that supported the trial judge's decision in this case, this court now unadvisedly makes such broad, unsupported judgments as, "Warner has failed to prove that the lost evidence would have been exculpatory" and "unavailability of the evidence does not violate Warner's due process right to a fair trial."
I see the reversal of the trial court's judgment in this case as a serious and unwarranted intrusion into the prerogatives of the trial court. I see this court as being more and more willing to do this, and I think that it is an unhealthy and unjust exercise of appellate powers. The trial court, in my opinion, clearly did not abuse its discretion in making the decision that it did; therefore, I would affirm the judgment.
NOTES
[1] Contrary to the state's assertion, we conclude that Warner properly raised issues regarding the state's failure to preserve exculpatory and material evidence in his pretrial petition for a writ of habeas corpus. Warner is not seeking to suppress or challenge the admissibility of certain evidence. Such a challenge would properly be brought in a motion to suppress. Cook v. State, 85 Nev. 692, 462 P.2d 523 (1969). Rather, Warner contends that the state's loss of the evidence precludes him from testing it for exculpatory value, and that proceeding to trial without the evidence would deny him a fair trial and result in a due process violation. Thus, we conclude that the district court correctly considered this issue.
[2] The state further contends that although it has a duty to preserve evidence within its possession or control, it had no duty to gather evidence which was within Warner's control, such as the lounge chair and ottoman. Because Nevada law concerns the situation where the state fails to preserve evidence already within its possession, the state urges this court to adopt an approach similar to that articulated by the New Mexico Supreme Court in State v. Ware, 118 N.M. 319, 881 P.2d 679 (1994), for situations when the state fails to gather evidence. In light of our conclusion in this case, we find it unnecessary to adopt such a standard.