An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| TONY ONTAI BROWN,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 60082 |

FILED

SEP 2 6 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK



## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of burglary, two counts of robbery, one count of burglary while in possession of a firearm, and one count of robbery with a deadly weapon. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

Appellant Tony Brown's convictions stem from three separate robberies that occurred at different convenience stores in February and March 2011. On appeal, Brown argues that the district court erred (1) in denying his request to dismiss the entire jury venire and in denying his *Batson* challenge, (2) by allowing the State to use pictures not yet introduced into evidence in its opening statement, (3) by allowing witnesses to identify Brown when their opinions were allegedly tainted by a suggestive photographic lineup, (4) by allowing the State to introduce evidence of prior convictions and alleged other bad acts, (5) in denying Brown's proposed *Sanborn* jury instruction and in determining that the prosecutor's closing argument was not misconduct, (6) by improperly sentencing Brown as a habitual criminal, (7) in ordering Brown to pay $250 to the Indigent Defense Fund, and (8) by committing cumulative

SUPREME COURT
OF
NEVADA

(O) 1947A

13-28802

error that warrants reversal of the judgment of conviction. We conclude that Brown's contentions lack merit, and we affirm the judgment of conviction.

*Denial of Brown's request to dismiss jury venire and his Batson challenge*

Brown argues that the district court denied him his right to a fair trial by an impartial jury both when it refused to dismiss the entire venire and when it denied his challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986). Brown contends that the entire venire was "tainted" by negative comments made by some prospective jurors. Brown insists that although the jurors that expressed a bias were dismissed, the jurors that remained were prejudiced by the bias of the dismissed jurors. We disagree.

In reviewing claims of juror bias, deference is given to the trial court, and a finding of impartiality will only be overturned for manifest error. *Skilling v. United States*, 561 U.S. ___, ___, 130 S. Ct. 2896, 2903 (2010). Thus, this court reviews decisions of jury impartiality using an abuse of discretion standard. *Blake v. State*, 121 Nev. 779, 795-96, 121 P.3d 567, 578 (2005).

Although there is a constitutional requirement that a defendant receive a panel of impartial, indifferent jurors, it is sufficient if the jurors can lay aside their impressions or opinions and render a verdict based on the evidence presented at trial. *Bishop v. State,* 92 Nev. 510, 515, 554 P.2d 266, 269 (1976); *Skilling*, 561 U.S. at ___, 130 S.Ct. at 2925. Here, Brown does not allege that any members of the selected jury actually expressed bias at any point. Rather, he merely argues that the dismissed prospective jurors must have prejudiced the remaining jury pool. However, there is no evidence that any of the selected jurors had preconceived notions that they were unable to set aside. Moreover, the

Supreme Court
OF
Nevada

(O) 1947A

2

selected jurors gave the constitutionally required assurances of impartiality. *Id.* Therefore, we conclude that the district court did not abuse its discretion in denying Brown's motion to strike the entire venire.

This court also reviews denials of *Batson* challenges under an abuse of discretion standard. *Nunnery v. State*, 127 Nev. ___, 263 P.3d 235, 258 (2011). To address Brown's argument that the district court should have required the prosecutor to give his reasons for both striking one African-American juror and making preemptory-challenge decisions that kept a second African-American juror off the final panel, we look to the United States Supreme Court's three-point test for *Batson* challenges that this court adopted in *Doyle v. State*, 112 Nev. 879, 887, 921 P.2d 901, 907-08 (1996), and expanded in *Kaczmarck v. State*, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004). Under that test, the opponent of a peremptory challenge must first make a prima facie case of racial discrimination. *Id.* To do this, the opponent must demonstrate that the "totality of the relevant facts give rise to an inference of discriminatory purpose." *Batson*, 476 U.S. at 94. Relevant facts that this court will consider in determining the existence of a discriminatory purpose include whether there was a pattern of strikes against jurors, the prosecutor's questions and statements during voir dire, and how a prosecutor uses his challenges. *Libby v. State*, 113 Nev. 251, 255, 934 P.2d 220, 222-23 (1997).

Here, Brown did not show any conduct by the State that supports an inference of discriminatory purpose. Brown merely points to the fact that the preempted juror was one of three potential African-American jurors and, that by waiving their last two peremptory challenges, another African American was dismissed along with the rest of the prospective jury panel. However, the dismissal of *one* African-

American juror is not sufficient to demonstrate a pattern when the State waived its last two peremptory challenges instead of using another to excuse the remaining African American from the jury. Therefore, we conclude that the district court did not abuse its discretion in denying Brown's *Batson* challenge.

*Inclusion of pictures during opening statement not yet introduced into evidence*

Brown argues that the district court erred when it allowed the State to use photographs not yet introduced into evidence in its opening statement PowerPoint. Moreover, Brown insists that he was prejudiced by the existence of these photographs in the opening statement. We disagree.

A district court has great discretion in evidentiary decisions; thus, its decision will not be overturned unless the court abused its discretion. *Crowley v. State*, 120 Nev. 30, 34, 83 P.3d 282, 286 (2004). Although it is the duty of counsel while making an opening statement to avoid overstating facts, there is not misconduct unless the prosecutor makes statements in bad faith. *Rice v. State*, 113 Nev. 1300, 1312-13, 949 P.2d 262, 270 (1997), *abrogated on other grounds by Rosas v. State*, 122 Nev. 1258, 1265 n.10, 147 P.3d 1101, 1006 n.10 (2006).

Here, it appears the prosecutor had a good faith belief that the photographs would be admissible. Indeed, during trial, the three surveillance videos from which the prosecutor took the photographs were admitted and discussed. In response to the motion for a mistrial, the district court held that the prosecutor did not include anything that was not allowed, and noted that even if she did, there was no due process violation as a result. Therefore, we conclude that the prosecutor used the photographs in good faith.

*Allowance of witness identification*

Brown argues that the district court erred in denying his motions to suppress evidence of a photographic lineup and the subsequent in-court identification of him by certain witnesses. Brown contends that the photographic lineup was unduly suggestive, and thus rendered the pretrial and in-court identifications unreliable, because he was the only subject in the lineup with a thin face and his complexion was darker than that of at least three others in the lineup. We disagree.

Because this is an evidentiary decision, we will only overturn it if the district court abused its discretion. *Crowley*, 120 Nev. at 34, 83 P.3d at 286. Pretrial identifications are inadmissible if the procedures used are unnecessarily suggestive and if the identification is consequently unreliable. *Thompson v. State*, 125 Nev. 807, 813, 221 P.3d 708, 713 (2009). This court has held that a district court should set aside a photographic lineup "only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Cunningham v. State*, 113 Nev. 897, 904, 944 P.2d 261, 265 (1997) (internal quotations omitted).

In reviewing the record, we hold that Brown's arguments lack merit, as there is no obvious substantial likelihood of misidentification. Furthermore, because a reliability analysis under *Thompson* only needs to occur if the identification procedure is impermissibly suggestive, we need not analyze further. *Thompson*, 125 Nev. at 813, 221 P.3d at 713. Therefore, we conclude that the district court did not abuse its discretion in denying Brown's motions to suppress the lineup and subsequent in-court identification.

*Introduction of alleged bad act evidence*

Brown argues that the district court erred when it denied his motion for a mistrial because a detective's testimony introduced evidence of alleged bad acts that were clearly more prejudicial than probative. Brown maintains that the district court improperly allowed Detective Penny to testify that (1) Penny identified Brown by his tattoos, which were registered in a criminal database, implying that Brown was a gang member; and (2) Brown provided Penny with false information about his identity, and the false identity Brown elected to provide was for that of a registered sex offender. We disagree.

The decision to determine whether a mistrial is warranted rests within the discretion of the district court. *Rudin*, 120 Nev. at 142, 86 P.3d at 586. Moreover, we will not overturn the district court's evidentiary decisions unless there is an abuse of discretion. *Crowley*, 120 Nev. at 34, 83 P.3d at 286.

Normally, a "[r]eference to past criminal history is reversible error." *Walker v. Fogliani*, 83 Nev. 154, 157, 425 P.2d 794, 795 (1967). The test for deciding whether a statement does elicit an inference of a criminal past is "whether the jury could reasonably infer from the evidence presented that the accused had engaged in prior criminal activity." *Witherow v. State*, 104 Nev. 721, 724, 765 P.2d 1153, 1155 (1988).

Here, Detective Penny merely referenced a database with tattoos and never explicitly mentioned any word or phrase that alluded to Brown's previous incarcerations or criminal past. Although it is possible that an uninformed jury could make the assumption that any database a police officer has access to only tracks criminals, such an unsubstantiated

possibility is not enough to draw a reasonable inference. Thus, the district court's decision to admit Detective Penny's reference to a tattoo database was not an abuse of discretion. *See Reese v. State*, 95 Nev. 419, 422, 596 P.2d 212, 215 (1979).

To address Brown's argument that it was improper to allow Detective Penny to testify that Brown provided false identifying information, this court has held that evidence of uncharged bad acts may be admitted for several purposes, including as proof of "'motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.'" *Tavares v. State*, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001) (quoting NRS 48.045(2)). This court has stated that "declarations made after the commission of the crime which indicate consciousness of guilt, or are inconsistent with innocence, or tend to establish intent may be admissible." *Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 181 (2005) (internal quotations omitted). However, bad act evidence is presumed inadmissible unless "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Tavares*, 117 Nev. at 731, 30 P.3d at 1131 (internal quotations omitted).

That Brown lied about his identity and was even willing to identify himself a sex offender to hide his identity is very probative to consciousness of guilt. The probative value highly outweighs any prejudicial harm Brown may have experienced as a result of telling the jury that he lied to a police officer. Further, Brown's action of misidentifying himself to police was noticed by way of police report in the State's Motion to Admit Other Bad Acts and was discussed in a hearing

outside the presence of the jury the morning before trial, and the court agreed to allow said testimony. *See Bigpond v. State*, 128 Nev. ___, 270 P.3d 1244, 1250 (2012). Thus, the introduction of testimony that Brown lied to a police officer was admissible as evidence of consciousness of guilt and that the district court did not abuse its discretion in allowing its admission.

Therefore, we conclude that the district court did not abuse its discretion in denying Brown's motion for mistrial.

*Denial of Sanborn jury instruction and finding of no prosecutorial misconduct*

Brown argues that the district court improperly denied his proposed *Sanborn* jury instruction informing the jury that the police failed to collect material evidence, specifically, a message left on a detective's answering machine and fingerprint evidence from the improperly secured crime scene. *Sanborn v. State*, 107 Nev. 399, 408, 812 P.2d 1279, 1286 (1991) (requiring a curative jury instruction in a new trial instructing the jury that failure to test a firearm for blood and fingerprints presumes that the victim and not the defendant fired the weapon). Further, Brown contends that the prosecutor made improper comments in closing arguments, which unfairly emphasized his other bad acts and led the jury to believe Brown was a sex offender. We disagree with both contentions.

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). To establish that a due process violation occurred from the loss or destruction of evidence, a defendant must show either that the state acted in bad faith or that the loss unduly prejudiced the defendant's case and that the evidence possessed an exculpatory value

that was apparent before the evidence was destroyed. *Sheriff v. Warner*, 112 Nev. 1234, 1239-40, 926 P.2d 775, 778 (1996). To show undue prejudice, the defendant must demonstrate that it could be reasonably anticipated that the evidence sought would be exculpatory and material to the defense. *Id.* at 1240, 926 P.3d at 778.

Here, it appears that the loss of answering machine message and fingerprint evidence was not an act of bad faith because it would have added little value to the police investigation given that the victim of the crime had significant interaction with the defendant, took his identification, and was able to visually identify him. Furthermore, the loss of the evidence was not material or of exculpatory value prior to its destruction, and Brown's case was not unduly prejudiced by the loss; the police already had video surveillance, an identification card, and a witness testify to prove Brown's identity. Because the lost evidence was not material, the loss did not unduly prejudice Brown's case. Therefore, we conclude that the district court did not abuse its discretion when it denied Brown's request for *Sanborn* jury instructions.

This court generally only hears issues of prosecutorial misconduct if the party raising the issue on appeal objected to the remarks at the time they were made. *Riley v. State*, 107 Nev. 205, 218, 808 P.2d 551, 559 (1991). When a party failed to raise an issue below, we may elect to address that error when it rises to the level of plain error, affecting a defendant's substantial rights. *Mclellan v. State*, 124 Nev. 263, 269, 182 P.3d 106, 110 (2008). Here, Brown failed to object to the prosecutor's closing statement during trial and has failed to show how his substantial rights were affected. This claim has no merit.

*Improper sentencing as a habitual criminal*

Brown argues that his sentence should be vacated both because he should have been provided a jury trial for the enhancements under NRS 207.010 and 207.012 and because his sentence amounts to cruel and unusual punishment. We disagree.

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held that any fact that increases a penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt, *unless that fact is a prior conviction. Id.* at 490. With regards to NRS 207.010, this court has held that statute constitutional so long as the district court only uses prior convictions as a factor in its determination and considers any other evidence for the sole purpose of deciding whether to use its discretion to dismiss the count. *O'Neill v. State*, 123 Nev. 9, 15, 153 P.3d 38, 42 (2007). Similarly, NRS 207.012 leaves no discretion whatsoever to either the prosecution or the district court, and there is no opportunity for the district court to weigh any fact other than the existence of a conviction.[1]

Because the only evidence to support habituality presented by State were the six Nevada judgments of conviction for felonies, Brown did not have a right to a jury trial for a habitual criminal enhancement, under either NRS 207.010 or NRS 207.012. Therefore, we conclude that the district court's determination to add a habitual criminal enhancement

---

[1]Brown asks this court to revisit and overturn *O'Neill* given recent United States Supreme Court decisions distinguishing *Apprendi*. We decline to do so as Brown has provided no case law suggesting that *Apprendi* has been overruled.

to Brown's sentence did not violate Brown's right to a jury trial under the Sixth Amendment of the United States Constitution.

To address Brown's argument that the enhancement of his sentence under NRS 207.012 amounts to cruel and unusual punishment, this court reviews sentencing using an abuse of discretion standard. *Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009). "The Eighth Amendment of the United States Constitution does not require strict proportionality between the crime and sentence but forbids only an extreme sentence that is grossly disproportionate to the crime." *Id.* at 347-48, 213 P.3d at 489. Consequently, "[r]egardless of its severity, a sentence that is within the statutory limits is not cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience." *Id.* at 348, 213 P.3d at 489 (internal quotations omitted).

Here, Brown's sentence is within the statutory limits of NRS 207.012. *See* NRS 207.012. Moreover, Brown's punishment of concurrent life sentences without the possibility of parole is not disproportionate to his offenses, as he was convicted of three counts of burglary, three counts of robbery, and had been convicted of similar charges six times in the past. Therefore, the district court's punishment does not constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

*Indigent Defense Fund payment*

Brown argues that the district court erred by ordering him to pay $250 to the Indigent Defense Fund without making findings as to his ability to pay. We disagree.

Brown failed to raise this issue at district court. When a party fails to object below, appellate review is precluded unless it rises to the

level of plain error. *Mclellan*, 124 Nev. at 269, 182 P.3d at 110. Plain error exists when the error was clear and it affects a defendant's substantial rights. *Id.*

A district court may order the defendant to pay all or part of the state's expenses; however, it must consider the defendant's financial resources. *Truesdell v. State*, 129 Nev. ___, ___, ___ P.3d ___, ___ (Adv. Op. No. 20, Apr. 4, 2013) (citing NRS 178.3975(1)). Even where a district court does not make specific findings when ordering a defendant to pay the Indigent Defense Fund, a defendant must demonstrate how the payment affects his or her substantial rights. *Id.*

Here, Brown has failed to show how his substantial rights were affected. Therefore, we conclude that the district court did not commit plain error by requiring Brown to pay $250 to the Indigent Defense Fund.

*Cumulative error*

Finally, Brown argues that if individual error is not enough to reverse, the cumulative effect of all the errors warrants reversal. We disagree. "Relevant factors to consider in evaluating a claim of cumulative error are (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000). Here, the issue of guilt was not close on the offenses, some of which were violent, and there are no erros to cumulate. Therefore, we conclude that this claim of cumulative error has no merit.

Having considered all of Brown's arguments, we conclude that they lack merit as set forth above. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc: Hon. David B. Barker, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A