142 Nev., Advance Opinion 9

# IN THE SUPREME COURT OF THE STATE OF NEVADA

ISAIHA DUCKKET,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 87853

**FILED**

FEB 05 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and grand larceny auto. Eighth Judicial District Court, Clark County; Carli Lynn Kierny, Judge.

*Affirmed.*

Winters Spelman PLLC and S. Alex Spelman, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Karen Mishler, Chief Deputy District Attorney, Clark County,
for Respondent.

Stacy M. Newman, Las Vegas, and Katheryn Hickman, Alternate Public Defender, Washoe County,
for Amicus Curiae Nevada Attorneys for Criminal Justice.

26-05664

BEFORE THE SUPREME COURT, EN BANC.[1]

## OPINION

By the Court, BELL, J.:

Appellant Isaiha Duckket represented himself during his criminal trial. Duckket asserts on appeal that he was not competent to represent himself due to mental illness. Courts may deny requests from defendants to represent themselves when competent to stand trial but unable to conduct trial proceedings by themselves when symptoms of mental illness impair their ability to conduct proceedings. Even so, based on the record in this case, we conclude the district court did not err in finding Duckket competent to represent himself. None of Duckket's other asserted errors warrants reversal. As a result, we affirm Duckket's conviction.

### FACTS AND PROCEDURAL HISTORY

Isaiha Duckket joined his friends, Michael Jackson, Jr., and Corvony Thompson, at a Las Vegas recording studio. They planned to record music. After all three men arrived, an argument ensued. Duckket became so angry he was asked to leave. Duckket collected himself outside and returned to the studio. The three men then exited the building. Once outside, another argument commenced.

Surveillance video captured the unfolding dispute. Duckket pulled out a gun and fired a total of nine shots at Jackson and Thompson. Bullets struck Jackson in the neck, upper chest, upper left arm, and bicep.

---

[1]The Honorable Michael L. Douglas, Senior Justice, was assigned to hear any and all matters related to this appeal in place of the Honorable Patricia Lee, Justice.

(O) 1947A

Duckket fired at Thompson several times, even after Thompson was lying on the ground, hitting him in the chest. Duckket then demanded Jackson's vehicle and left, driving to California and discarding the guns in the desert. Thompson died at the scene, while Jackson survived.

The State charged Duckket with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, robbery with the use of a deadly weapon, grand larceny auto, and possession of a firearm by a prohibited person. Duckket pleaded not guilty to the charges, and the case was set for trial. Duckket invoked his speedy trial rights.

Prior to trial, Duckket sought to suppress testimony or dismiss his charges altogether based on loss of evidence after the Las Vegas Metropolitan Police Department (LVMPD) performed a forensic technique that destroyed the original security video of the incident. Duckket then filed a pretrial petition for a writ of habeas corpus, alleging the State failed to establish probable cause at the preliminary hearing, but did not include the statutorily required waiver of his speedy trial right in his petition. The petition was ultimately denied.

Over the course of the next year and three months, several events delayed Duckket's trial. A week prior to the date originally set for Duckket's trial, the court sua sponte continued the trial based on concern expressed by Duckket's attorney that the attorney would not be ready. Two weeks before the rescheduled trial date, Duckket's attorney noted competency concerns, and Duckket was referred to competency court, where two providers found him competent to stand trial. This referral required the trial to be rescheduled again. Six days before the start of Duckket's now-twice-rescheduled trial, Duckket moved to dismiss counsel and asked to represent himself. The district court appointed new counsel and, after a

Supreme Court
of
Nevada

(O) 1947A

third continuance due to new counsel being appointed, trial went forward. During jury selection, Duckket's attorney voiced a concern to the court that Duckket had been hearing voices in white noise that Duckket believed were communicating a message. Based on this and other behaviors, the district court then continued trial a fourth time and referred Duckket back to competency court, where four providers evaluated him. Three of the four providers concluded Duckket was competent to stand trial. Consequently, the district court found Duckket competent to stand trial.

Following the finding of competency, Duckket moved to dismiss his attorney and represent himself. After canvassing Duckket regarding his desire to self-represent, the district court granted Duckket's request. Duckket's standby counsel then informed the court that he would be unavailable to attend trial. Due to Duckket's insistence on moving forward, the court appointed an investigator to assist Duckket, and Duckket represented himself throughout the course of his eight-day trial. The jury returned a verdict finding Duckket guilty of second-degree murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and grand larceny auto. The district court denied Duckket's motion to dismiss for violation of his right to a speedy trial and sentenced Duckket to life in prison with minimum parole eligibility after twenty-eight years. Duckket now appeals.

### DISCUSSION

On appeal, Duckket seeks to have his conviction reversed, citing several alleged errors that he claims took place before and during his trial. First, Duckket argues he was denied the right to assistance of counsel because he was incompetent to represent himself and his waiver of counsel was not knowing, voluntary, or intelligent. Second, Duckket claims he was denied a speedy trial. Third, Duckket asserts he was denied a fair trial due

to the State's destructive method of collecting evidence from a media storage device. Fourth, Duckket maintains he was denied the right to compulsory process for securing witnesses. And fifth, Duckket argues the district court erred in refusing to grant an "other acts" limiting jury instruction and a self-defense jury instruction for attempted murder. We ultimately conclude that none of Duckket's claims assert error warranting reversal, and we affirm.

*Duckket knowingly, willingly, and voluntarily asserted his right to represent himself*

Duckket contends he was deprived of his constitutional right to counsel when the district court granted his motion to represent himself, as he was incapable of doing so. This court has previously outlined several situations in which a district court may deny a defendant's request to represent themselves, including when the defendant is incompetent to waive the right to counsel. *Gallego v. State*, 117 Nev. 348, 356-57, 23 P.3d 227, 233 (2001). The United States Supreme Court similarly evaluated, in 2008, whether an individual found competent may nevertheless be determined incapable of self-representing at trial due to mental illness. *Indiana v. Edwards*, 554 U.S. 164 (2008). We now consider *Gallego* alongside the Supreme Court's subsequent decision in *Edwards*, establishing a separate, higher standard to determine a defendant's competence to waive counsel and eschewing the less stringent *Dusky* standard used for determining a defendant's competence to stand trial. *Edwards*, 554 U.S. at 174-75. We conclude that the district court exercised sound discretion in finding Duckket competent to represent himself.

The right to self-representation is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 8 of the Nevada Constitution. A defendant's exercise of this right must be knowing and intelligent, and the defendant must be made aware of the

dangers and disadvantages in exercising this right. *Faretta v. California*, 422 U.S. 806, 835 (1975). *Faretta* requires district courts to conduct a "thorough inquiry" and to "make findings regarding as to whether the defendant's waiver of the right to counsel is knowing, intelligent, and voluntary." *Hooks v. State*, 124 Nev. 48, 55-56, 176 P.3d 1081, 1085 (2008). While this court has previously declined to require a rote, mechanical implementation of a *Faretta* canvass, an inquiry that fails to ascertain a defendant's understanding of potential sentences upon conviction or the elements of the crimes with which the defendant is charged is insufficient. *Miles v. State*, 137 Nev. 747, 752-53, 500 P.3d 1263, 1270 (2021).

The district court may deny a request for self-representation if "the defendant is incompetent to waive the right to counsel, the request is untimely, the request is equivocal, the request is made solely for the purpose of delay, or the defendant abuses the right to self-representation by disrupting the judicial process." *Gallego*, 117 Nev. at 357, 23 P.3d at 233 (citing *Tanksley v. State*, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (affirming arson conviction and habitual offender enhancement where court denied defendant's request to self-represent based on disruptive shouting and disrespectful behavior during pretrial hearing)). At issue here is a defendant's competence to waive the right to counsel and to instead serve as their own counsel.

The United States Supreme Court has noted the choice "to forgo trial counsel presents a very different set of circumstances than the mental competency determination for a defendant to stand trial." *Edwards*, 554 U.S. at 165. In *Edwards*, the Supreme Court concluded a "gray area" existed between the minimal *Dusky* standard that "measures a defendant's ability to stand trial and a somewhat higher standard that measures mental

(0) 1947A

fitness for another legal purpose." *Id.* at 172. *Edwards* concerned a trial court's denial of a request from the defendant, charged with attempted murder, to represent himself after the defendant had been committed to the state hospital and had been intermittently deemed incompetent to stand trial. *Id.* at 168-69. Noting that the defendant's litany of psychiatric records indicated the defendant suffered from schizophrenia, the trial court found the defendant competent to stand trial but not competent to represent himself. *Id.* at 169. The Supreme Court concluded that an inherent difference existed between a defendant's ability to comprehend proceedings and assist counsel, measured by *Dusky,* and the higher level of competence necessary to present one's own defense without counsel. *Id.* at 174-75. Based upon this difference, the Court concluded, judges are constitutionally permitted to "take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so" and allowing courts to deny self-representation where a defendant lacks this requisite competence. *Id.* at 177.

We take this opportunity to make clear that a court may deny a defendant's request to self-represent where the defendant, in the opinion of the court after a *Faretta* canvass, lacks the competence to conduct their own defense. We now evaluate whether the trial court erred here in concluding Duckket was competent to knowingly and intelligently waive the right to counsel.

While the record indicates Duckket demonstrated intermittent symptoms of mental illness during the proceedings, Duckket's overall interactions with the court demonstrate substantial evidence of competence. Notably, just before the court conducted Duckket's *Faretta*

canvass, Duckket told the court, "As I've said once before, I'm very competent on my case laws [sic]. I do want to represent myself, but I would like a standby lawyer . . . ." After Duckket's request, the court conducted a thorough *Faretta* canvass, during which the court asked him directly, among other things, whether he had any competency issues. The court noted Duckket's competency had previously been considered but that Duckket had ultimately been deemed competent. Duckket responded that he did not have competency issues. The canvass continued, and Duckket acknowledged that he understood his rights and the risks of proceeding pro se. Duckket also acknowledged the maximum sentence he was facing. Throughout the canvass, Duckket discussed various legal theories and cited to caselaw; when the court advised him that representing himself would be unwise, Duckket replied, "I fully understand your position, but I also understand the *Hollis versus the State* position, which means any defendant has the right regardless of the fact to represent himself." The court concluded its canvass, noting while Duckket "ha[d] the right to represent [him]self," Duckket lacked knowledge in "some areas." Nonetheless, the court concluded Duckket knowingly and voluntarily waived his right to counsel and asserted his right to self-representation.

We conclude the district court sufficiently considered Duckket's specific circumstances, including his previous competency evaluations, and properly weighed all relevant factors before permitting Duckket to represent himself. *See Edwards*, 554 U.S. at 177 (recognizing that the district court "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant"). Duckket expressed an understanding of the judicial process, an ability to respond appropriately to the court and follow court

(O) 1947A

rules, and a clear understanding of the right he was waiving and the responsibility he assumed by choosing to represent himself. Though Duckket seemed to experience some isolated incidents of delusions, his mental health condition did not preclude him from understanding and waiving his right to counsel. Duckket engaged in a coherent, cohesive, and competent *Faretta* canvass with the court. Furthermore, the record indicates Duckket submitted proper legal documents multiple times and followed proper courtroom procedure throughout his trial. Whether Duckket's legal arguments were ultimately accurate is irrelevant to this analysis, as "[a] Faretta canvass is not a law school exam that the defendant must pass or be denied the right to represent oneself." *Miles*, 137 Nev. at 752, 500 P.3d at 1270. We conclude that, under the circumstances presented in this case, the district court exercised sound discretion in finding Duckket was competent to represent himself.

*Duckket's right to a speedy trial was not violated*

Next, Duckket contends he was denied the right to a speedy trial, both constitutionally under the Sixth and Fourteenth Amendments and statutorily under NRS 178.556. Duckket's arguments fail because he was responsible for the delays that prevented a speedy trial. We therefore decline to overturn Duckket's conviction on this ground.

*Duckket was not deprived of his constitutional right to a speedy trial*

A claim alleging a violation of the Sixth Amendment speedy trial right is vetted by applying the four-part balancing test the United States Supreme Court set out in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), and clarified in *Doggett v. United States*, 505 U.S. 647, 651-54 (1992). *See State v. Inzunza*, 135 Nev. 513, 516, 454 P.3d 727, 731 (2019). The four factors a court will weigh are (1) "the length of the delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice

to the defendant." *Barker*, 407 U.S. at 530. This court reviews a district court's ruling on a motion to dismiss for a speedy trial violation for an abuse of discretion. *Inzunza*, 135 Nev. at 516, 454 P.3d at 730. In evaluating whether a defendant's Sixth Amendment right to a speedy trial has been violated, this court gives deference to the district court's factual findings and reviews them for clear error, but reviews the court's legal conclusions de novo. *Id.* We now evaluate Duckket's constitutional claim against this framework.

(1) *Length of delay*

When determining whether a violation of a request for speedy trial occurred, the delay must first be "presumptively prejudicial." *Doggett*, 505 U.S. at 651-52. If no prejudice can be presumed from the delay, none of the other factors are considered. A delay is more likely to be presumptively prejudicial where it approaches or exceeds one year. *Id.* at 652 n.1. Here, the overall delay in Duckket's case was one year and three months. As this period satisfies the "presumptively prejudicial" threshold, the first factor is met, and we advance to the remaining factors to determine if a speedy trial violation warrants relief.

(2) *Reason for delay*

Speedy trial analysis focuses heavily on the party causing the delay and specifically, "whether the government is responsible for the delay." *Inzunza*, 135 Nev. at 517, 454 P.3d at 731.

Here, the record indicates the State was not responsible for any of the delays that Duckket claims violated his right to a speedy trial. These delays included (1) a sua sponte decision by the court to delay proceedings to allow Duckket's counsel to adequately prepare for trial, lasting 57 days; (2) a competency referral to determine whether Duckket was competent to stand trial, lasting 69 days; (3) Duckket's request for new counsel, which

(O) 1947A

delayed trial for 63 days; and (4) a second competency referral, which caused a delay of 181 days. All delays were either attributable to Duckket or intended to preserve his constitutional rights. The State never requested a continuance. Accordingly, we conclude the second factor weighs against Duckket.

(3) *Assertion of the right*

The third factor in a speedy trial analysis is "whether in due course the defendant asserted [such] right." *Inzunza*, 135 Nev. at 518, 454 P.3d at 732 (quoting *United States v. Erenas-Luna*, 560 F.3d 772, 778 (8th Cir. 2009)). A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32.

Though the record indicates Duckket continually verbally asserted his right to a speedy trial throughout the district court proceedings, Duckket at times acted inconsistently with that right. He filed a pretrial petition for a writ of habeas corpus with the district court. *See Manley v. State*, 115 Nev. 114, 126, 979 P.2d 703, 710 (1999) (noting "appellant was responsible for the part of the delay caused by filing" where he instructed his attorney to file a habeas petition). And his initial attorney sought a continuance to prepare for trial and obtain further evidence. Duckket later filed a motion for new counsel. Ultimately, this factor weighs against Duckket.

(4) *Prejudice to Duckket*

The final factor to consider when evaluating whether a defendant was deprived of their right to a speedy trial is the resulting prejudice, if any. This court specifically considers "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the defense will be impaired." *Inzunza*, 135 Nev. at 518, 454 P.3d at

SUPREME COURT
OF
NEVADA

11

(O) 1947A

732 (quoting *Barker*, 407 U.S. at 532). "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Here, Duckket asserts as prejudice the loss of a potential defense witness, Cecil Narin, the security guard present at the recording studio during the shooting. Duckket contends that Narin's contact information changed after the trial was delayed and Duckket was unable to serve him with a subpoena. However, Duckket did not attempt to subpoena Narin until the eve of trial, and the record indicates the State provided Duckket's court-appointed investigator with updated contact information for Narin. We conclude the delay of the trial did not cause the loss of this witness for Duckket. Because Duckket does not assert any other ground of prejudice, we conclude this factor also weighs against Duckket.

Under this balancing test, we conclude the delays in Duckket's case did not amount to a violation of his constitutional right to a speedy trial. While the delay between Duckket being charged and the start of his ultimate trial was presumptively prejudicial in that it lasted over a year, the other three factors weigh heavily against Duckket. Duckket's argument thus fails to present any grounds for reversal on this issue.

*For the same reasons, Duckket's statutory right to a speedy trial was not violated*

Duckket also contends that the delay violated his statutory right to a speedy trial under NRS 178.556. NRS 178.556(1) provides that "[i]f a defendant whose trial has not been postponed upon the defendant's application is not brought to trial within 60 days after the arraignment on the indictment or information, the district court may dismiss the indictment or information." This court has further held that dismissal is required when

Supreme Court
OF
Nevada

(O) 1947A

12

there is no good cause for the delay. *Huebner v. State*, 103 Nev. 29, 31, 731 P.2d 1330, 1332 (1987).

Just as we concluded that Duckket's constitutional speedy trial rights were not violated, we also conclude that Duckket is not entitled to relief under the statute. Here, Duckket's actions run contrary to the statute—for a court to dismiss on this ground, the defendant must not have prompted the delay. Duckket did so several times. Conversely, even if Duckket had not prompted the delays himself, we conclude that the district court would not have abused its discretion in finding good cause for the delays. Each delay was done at Duckket's behest or for his benefit to ensure his rights. Ultimately, NRS 178.556 does not provide relief for Duckket on this issue.

*Duckket's right to a fair trial was not violated, as the State did not act in bad faith when it re-recorded surveillance footage before inadvertently destroying the original recording, and Duckket was not prejudiced by the alleged degradation in quality*

Next, Duckket contends he was denied his right to a fair trial and to due process because the reproduced security footage introduced at trial was of a lower quality than the original footage. He argues the enhanced sound quality of the original, compared to the recording shown at trial, would have been vital to his theory of self-defense.

During its investigation, LVMPD was unable to access any footage from the cloud-based storage of the recording studio's security system after 10:36 p.m. on the night of the shooting. Instead, LVMPD recovered the physical "hub" from the premises, which contained the original recordings. An LVMPD detective at trial testified that the hub was essentially a motherboard, which one could not plug into to copy from or to send copies through email. The only way to access the originals saved on the hub would require a "chip off" procedure, which would ultimately

SUPREME COURT
OF
NEVADA

13

(O) 1947A

destroy the hub. Knowing that the hub would be destroyed, LVMPD played the video on a screen and recorded what was playing on the screen with another camera as a precautionary measure before attempting the procedure. The procedure accidentally resulted in the destruction of the original data. The State then introduced at trial the manual recordings videoed before the "chip off" procedure.

This court reviews de novo an order denying a motion to dismiss for the destruction of evidence but reviews the district court's findings of fact for clear error. *Dawson v. State*, No. 85773, 2024 WL 4865776, at *6 (Nov. 21, 2024) (Order Affirming in Part) (citing *Leonard v. State*, 117 Nev. 53, 68, 17 P.3d 397, 407 (2001), and *State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013)). An appellant seeking to have his conviction reversed for loss of evidence must demonstrate "either (1) that the state lost or destroyed the evidence in bad faith, or (2) that the loss unduly prejudiced the defendant's case and the evidence possessed an exculpatory value that was apparent before the evidence was destroyed." *Sheriff, Clark Cnty. v. Warner*, 112 Nev. 1234, 1240, 926 P.2d 775, 778 (1996) (quoting *State v. Hall*, 105 Nev. 7, 9, 768 P.2d 349, 350 (1989)).

We conclude that the record does not support a finding of bad faith on the part of law enforcement. Investigators took precautions and obtained a backup of the data by manually recording it before attempting the chip off procedure. We similarly conclude that Duckket was not prejudiced because the mere allegation of a degradation in video quality in this case fails to rise to a level of undue prejudice. While our review of the recording does indicate a lack of audio, Duckket fails to prove the original recording contained the audio he claims it did. Duckket's claim of undue prejudice cannot survive on mere speculation alone. To the contrary, the

record indicates Duckket relied heavily upon the manual recording he claims was subpar to argue self-defense in his closing argument. Therefore, we conclude that Duckket was not denied his rights to a fair trial or due process when the manual recording, instead of the original, was admitted at trial.

*Duckket's right to compulsory process was not violated*

Duckket also asserts his right to compulsory process was violated when his court-appointed investigator, Ken Hardy, failed to serve Cecil Narin, whom Duckket had hoped to call at trial. Duckket similarly claims his compulsory process rights were violated when the district court refused to admit Narin's statement to police the night of the shooting.

The right to compulsory process ensures a defendant's ability to "compel production of witnesses in his or her own behalf." *Bell v. State*, 110 Nev. 1210, 1213, 885 P.2d 1311, 1313 (1994). A pro se defendant remains entitled to this compulsory process. *Faretta*, 422 U.S. at 818. Furthermore, defendants are entitled to the "'government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.'" *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987).

Here, the court provided Duckket with an investigator to assist him in his defense. The record indicates Hardy attempted to serve Narin, but when Hardy arrived at Narin's listed address, Narin was not present, and Hardy was therefore unable to effectuate service. We conclude that the assistance requirement of compulsory process was accomplished, as Duckket was provided with Hardy's services alongside subpoena power.

*Jury instructions*

*The district court did not abuse its discretion in refusing to give a limiting instruction with respect to other act evidence*

Duckket asserts the district court erred in refusing to provide an "other acts" limiting instruction to the jury even though Duckket's criminal history was introduced. A district court's refusal to give a jury instruction is reviewed for abuse of discretion or judicial error. *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).

We conclude the district court did not abuse its discretion or err in failing to provide an "other acts" limiting jury instruction. The State used Duckket's prior felony conviction to impeach him during cross-examination. Duckket asserts on appeal this required that a limiting instruction be given to the jury. We do not agree. The district court was not required to give a limiting instruction at the time the prosecutor introduced Duckket's criminal history and in the final instructions to the jury because the State used his prior convictions for impeachment pursuant to NRS 50.095(1). *See Tavares v. State*, 117 Nev. 725, 735, 30 P.3d 1128, 1132 (2001) (requiring a limiting instruction for uncharged bad act evidence), *holding modified by Mclellan v. State*, 124 Nev. 263, 182 P.3d 106 (2008) (allowing defendant to waive such instruction). Additionally, though Duckket's requested instruction was denied, the district court did instruct the jury that it could consider prior felony convictions only for purposes of witness credibility. Accordingly, the district court did not err by failing to provide an "other acts" limiting instruction.

*Though the self-defense instruction the court gave was ambiguous with respect to attempted murder, the error was harmless*

Duckket argues the district court erred in giving a self-defense instruction that applied only to murder and not to attempted murder.

Jury instruction number 16 read, in relevant part:

The killing of another person in self-defense is justified and not unlawful when the person who kills actually and reasonably believes:

1. That there is imminent danger that the assailant will either kill him or cause him great bodily injury; and

2. That it is absolutely necessary under the circumstances for him to use, in self-defense, force or means that might cause the death of the other person, for the purpose of avoiding death or great bodily injury to himself.

. . . .

An honest but unreasonable belief in the necessity for self-defense does not negate malice.

And jury instruction number 22 read:

Attempt Murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.

It is not necessary to prove the elements of premeditation and deliberation in order to prove Attempt Murder.

"Jury instruction[s] should be unambiguous," *Jackson v. State*, 113 Nev. 844, 849, 944 P.2d 240, 243 (1997), and those "that tend to confuse or mislead the jury are erroneous," *Carver v. El-Sabawi*, 121 Nev. 11, 14, 107 P.3d 1283, 1285 (2005)). Ultimately, we evaluate a district court's decision to give or not give a specific jury instruction for harmless error. *Barnier v. State*, 119 Nev. 129, 132, 67 P.3d 320, 322 (2003).

Here, the instruction failed to clearly communicate the applicability of self-defense to the attempted murder charge. Nonetheless, we conclude that the faulty instruction constitutes harmless error, as

surveillance footage and other evidence within the record does not support a theory of self-defense.

## CONCLUSION

We adopt the reasoning in *Edwards* that certain defendants may be competent to stand trial but may not be competent to represent themselves. We are not convinced that this is such a case. The district court's determination here properly considered the specific circumstances pertaining to Duckket's mental condition prior to permitting him to represent himself; we therefore conclude that reversal is not warranted on this issue. Because we similarly conclude no other grounds warranting reversal were demonstrated, we affirm Duckket's conviction.

_____, J.
Bell

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____,
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, Sr. J.
Douglas

SUPREME COURT
OF
NEVADA

(O) 1947A